# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 15, 2013

## ALLEN MASSEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Bradley County**
**No. 12-CR-181     Carroll L. Ross, Judge**

_____

**No. E2013-00908-CCA-R3-PC - Filed December 20, 2013**

_____

The petitioner, Allen Massey, appeals from the denial of post-conviction relief by the Criminal Court of Bradley County. Pursuant to a plea agreement, the petitioner entered guilty pleas to promotion of manufacturing methamphetamine and possession of methamphetamine, for which he received suspended sentences of four years and eleven-months and twenty-nine days, respectively. In this appeal, the petitioner argues that he received ineffective assistance of counsel and that his guilty pleas were involuntarily and unknowingly entered. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and JEFFREY S. BIVINS, JJ., joined.

David K. Calfee, for the Defendant-Appellant, Allen Massey.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Wayne Carter, District Attorney General; and Stephen Hatchett, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On December 8, 2008, the petitioner entered a guilty plea to the above listed offenses. The factual basis supporting the guilty pleas was as follows:

> On [November 3, 2008], based on a confidential source, the [petitioner] was stopped as a passenger in a car, and at that time a search was made of that vehicle, and was found in it one, 10-pound bag of organic iodine, digital scales, bags used for resale, lithium batteries, rubber bands, and numerous

unknown pills. Also at that time, he was run through the computer system for Tennessee Methamphetamine Information System, and it was revealed that he had purchased 14.4 grams of pseudoephedrine. That's the basis of the promotion, as well as there was a small amount of methamphetamine found on him at that time, which is the basis of the . . . . simple possession.

The petitioner agreed to the above factual basis and affirmed that he was pleading guilty because he was, in fact, guilty of the offenses. Prior to entering the above guilty plea, the petitioner said that trial counsel had reviewed the guilty plea paperwork with him and that he understood the ramifications of entering the guilty plea. He acknowledged that he signed the guilty plea paperwork, waived his right to a jury trial, and waived his right to appeal his case.

Additionally, the petitioner agreed that he discussed resolving his case, consistently with the plea agreement, at the general sessions court level. The trial court specifically asked the petitioner whether "the offer made by the State today [was] the same as what they told you [in general sessions court]." The petitioner replied, "Yes, Sir." Although trial counsel did not represent the petitioner in general sessions court, he agreed that the settlement offer, as reflected in his file, was the same. The petitioner said that no one threatened him or made any promises to him to force him to plead guilty. He also said that he was satisfied with how trial counsel handled his case. Asked if there was anything trial counsel should have done that he had not done, the petitioner replied, "He did great." Finally, the petitioner agreed that he wanted to proceed with the guilty plea, was not under the influence of alcohol or drugs, and had not taken any medication within the last twenty-four hours.

On October 6, 2009, the petitioner, acting pro se, filed a one-page, handwritten document entitled "Post Conviction Motion to Withdraw Plea." The petitioner asserted three grounds for relief (1) that he was not advised that he would be indicted by the federal government; (2) that he received "insufficient counsel"; and (3) that he was under the influence of medication prescribed by the Bradley County jail. On May 10, 2012, the trial court entered an order finding the petitioner indigent and appointing counsel.[1]

At the January 15, 2013 post-conviction hearing, trial counsel testified that he represented the petitioner in criminal court and another attorney represented the petitioner in general sessions court. Trial counsel acknowledged that his representation of the

_____

[1] The order noted that the court had only recently received the petition due to "an inadvertent oversight." Additionally, an amended petition for post-conviction relief was filed; however, the issues therein were the same as alleged in the petitioner's pro se petition.

-2-

petitioner was brief. He explained that the petitioner was arraigned and pleaded guilty in this case on the same day, December 8. Trial counsel spoke with the petitioner for "approximately 10, 15 minutes" and expressed his desire for additional time to prepare the case. He acknowledged that he did not have "full discovery" prior to the petitioner entering the guilty plea, but he reviewed the State's file and explained:

> I usually, in those types of cases, if we're trying to handle something, I always try to always review that file, even though, regardless if my client's wanting to enter a plea or not. I want to at least for our own record to be able to review it.
>
> . . . .
>
> . . . I'm always reluctant to [enter a guilty plea on arraignment day], but again, if my client is adamant, and as I say, I take the opportunity to review the file quickly to, to ascertain whether or not at least to do a brief discovery, and I also make known to them that I have not had the chance to get the discovery.

On the day of the guilty plea, the petitioner advised trial counsel that he had a pending felony offense and a violation of probation in Hamilton County. The petitioner also told trial counsel that he was working with the "DTF, and [the petitioner] thought he was going to be able to take care of those charges." Trial counsel advised the petitioner that the "effect of this plea . . . would probably have an effect on the charges that were pending . . . . [and] that they could use that against him on [the Hamilton County] charges." Despite trial counsel's advice, the petitioner "still indicated that he had had a plea agreement out of sessions court with [sessions counsel], that he still wanted to carry through on that plea agreement." The petitioner also advised trial counsel that he had "potential charges in federal court." Trial counsel told the petitioner that his guilty plea to the instant offenses "could affect his sentencing in federal court." Trial counsel said the petitioner was "adamant about wanting to proceed on that day."

The petitioner testified that he entered a guilty plea to federal methamphetamine offenses on May 27, 2010, and was currently serving a sentence of fourteen years in federal prison. The federal judgment of conviction was admitted as an exhibit to the hearing. The petitioner agreed that he was arrested in November 2008 for the instant offense. He recalled that he appeared in general sessions court and was represented by general sessions counsel. The petitioner could not remember the details of his discussions with general sessions counsel and explained his memory loss as follows:

Well, the main reason it was difficult for me to remember at the time was because I'd been doing meth[amphetamine] for some time, day and night, day and night, day and night. So my recollection of, of those days back then are pretty vague.

The petitioner recalled that general sessions counsel would "get [him] four years probation and send [him] home, and that would be it." The petitioner generally recalled the involvement of federal authorities and agents from the Georgia Bureau of Investigation, but he could not recall any details. He said he remembered one agent and provided him with some names.

Post-conviction counsel continued to ask the petitioner questions about his recollection from general sessions court. The petitioner vaguely recalled signing the general sessions waiver and plea agreement form, which was admitted as an exhibit. The form provided that the petitioner agreed to plead guilty to promotion of methamphetamine and possession of methamphetamine for resale in exchange for a suspended sentence of four years and 364 days, respectively. The form also noted that the petitioner was "to undergo in-patient treatment at CADIS, if provides info to GBI, and they say it is sufficient, will reduce to 3 [years] 6 [months] suspended sentence." The remaining charges were to be dismissed. The petitioner could not remember telling general sessions counsel or trial counsel about any potential federal charges. Had he known he would have been federally indicted, the petitioner would not have entered his pleas to the state offenses. The petitioner said that the instant offenses were used as an "enhancement" to his federal sentence.

The petitioner explained the reason why he wanted to pursue post-conviction relief as follows:

The reason I filed this is the way this, the way everything happened here is I didn't feel like I was guilty of these charges, and when it did give me a 10-year enhancement on my case, I filed it in, on my federal case I filed it, hoping to get this dropped in order to drop back to a 10-year, just a regular 10 to life is what I would have signed had this case not been on me. They used this as an enhancement and give me a 20 to life. So, therefore, if – I was hoping if I could get this taken care of here, it would cut my federal time.

The petitioner said that when he was incarcerated in Bradley County, he "somehow . . . got to medical and was put on Paxil[.]" He became extremely sick as a result of being given this medication by the jail and suffered "lockjaw or something . . . [and] was biting down on [his] teeth and couldn't hardly talk." On cross-examination, the petitioner conceded that he had other felonies that may have served to enhance his federal sentence.

-4-

Based on the above proof, the post-conviction court determined that the petitioner failed to present sufficient evidence in support of the allegations in his petition and that his guilty pleas were knowingly and voluntarily entered. The court entered a written order denying the petition. The petitioner now appeals.

## ANALYSIS

**I. Alleged Ineffective Assistance of Counsel**. The petitioner contends that the post-conviction court erred in denying post-conviction relief. Specifically, the petitioner argues that he received ineffective assistance of counsel based on trial counsel's failure to fully investigate his case. In response, the State contends that the proof adduced at the post-conviction hearing does not show that the petitioner would have proceeded to trial and declined the four-year suspended sentence and dismissal of the remaining charges, had counsel conducted a full investigation of his case. For the reasons that follow, we agree with the State.

In resolving this issue, we are guided by the following well settled law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)).

In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed.2d 674 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). Within the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); see also, Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn.1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how

best to represent a criminal defendant." Strickland, 466 U.S. at 688-89.  However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'"  House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In denying relief on this issue, the post-conviction court reasoned as follows:

At the hearing in this cause, trial counsel testified that the [petitioner] wanted to plead to the charges pursuant to an agreement that had already been made by him, the petitioner, at general sessions court.  While there was some discussion of potential charges in federal court, the petitioner had indicated that he thought he could take care of those charges in federal court by working with law enforcement personnel involved in those cases.

The alternative the [petitioner] had was to ask for a trial in the charges in [these] cases, and then run the risk of getting an even greater sentence at that trial, all of which could still have been used to enhance his federal charges.

The court finds that the Petitioner offered no evidence at his hearing that would support his contention that "he was actually prejudiced by his attorney's performance, [and] that but for the counsel's ineffectiveness that guilty plea would not have been agreed to."

There was no evidence to show that counsel was in any way ineffective in his defense of the petitioner.

Nothing in the record preponderates against the findings of the post-conviction court. In support of this issue, the petitioner points to the minimal contact he had with trial counsel prior to his guilty pleas and trial counsel's failure to complete discovery or investigate his case.  However, rather than any deficiency in trial counsel's performance, the petitioner's testimony at the post-conviction hearing focused solely upon his displeasure with the enhancement of his federal sentence as a result of the instant offense.  The record shows that the petitioner was aware of the potential for federal charges at the time of the plea in this case.  Trial counsel advised the petitioner that pleading guilty to the instant offenses would likely affect his other state and federal charges.   Nevertheless, the petitioner insisted upon accepting the plea agreement and entering the guilty pleas that day.  As noted by the post-conviction court, the petitioner had agreed to the terms of his plea agreement in general sessions court, nearly a month prior to entering his guilty pleas in this case.  The general sessions court guilty plea form was consistent with the terms of the instant plea agreement and noted that the State would reduce the petitioner's sentence even further if he provided

sufficient information to the Georgia Bureau of Investigation. Prior to the guilty plea, trial counsel examined and reviewed the State's file. Significantly, the petitioner does not explain in his petition or his brief to this court what additional investigation he claims trial counsel should have performed. Because the petitioner has failed to establish that he would have declined the State's settlement offer of a suspended sentence and proceeded to trial but for trial counsel's alleged failure to fully investigate his case, the petitioner is not entitled to relief.

**II. Guilty Plea.** Next, the petitioner asserts that the post-conviction court erred in concluding that his guilty pleas were knowingly, voluntarily, and intelligently entered. The petitioner argues that he was suffering from "illegal drug abuse, the effects of his withdrawal from said drug abuse, and the effects of medication prescribed to him while incarcerated" when he entered his guilty pleas. In response, the State contends that the post-conviction court properly denied relief. We agree with the State.

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include the following:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against

him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

In denying relief on this issue, the post-conviction court stated, in pertinent part, the following:

> In entering his plea in this matter, [the petitioner] signed the standard plea papers required for pleading guilty. These plea papers indicated that he understood the charges against him, that he understood and waived his rights to both a jury trial and an appeal should he be found guilty, that he had fully discussed these matters with his attorney, and that he fully understood the offer made to him by the state and which he accepted pursuant to his plea.

> In addition to these plea papers, the court, by way of review, went through each of these rights orally and on the record to insure that the [petitioner] knew what his rights were and what charges he was pleading to.

> In that plea proceeding, the [petitioner] repeatedly stated that he understood what his rights were, that he was waiving those rights, that he understood what the state's offer of settlement was, and that he was accepting that offer rather than facing the prospects of going to trial, and that, as has been earlier stated, the offer made to him by the state on the date of his plea was identical to the offer they made him at general sessions court when he bound his case over to the grand jury.

> . . .

> Petitioner also complains that, because of some alleged drug usage, he did not know what he was doing when he entered the plea in this cause. The court cannot help but note that in the Petitioner's original handwritten Petition . . . the assertion was that the petitioner was 'under the influence of medication prescribed by the Bradley County Jail.'[original footnote omitted]. At the hearing in this cause, however, the petitioner testified to his regular usage of methamphetamine over the years, but no proof was produced by him as to any prescribed medication that may have influenced his ability to know what he was doing when he entered the plea.

The post-conviction court then noted the following colloquy from the guilty plea hearing:

-9-

The Court: Have you been satisfied with your attorney's handling of this matter?

The Petitioner: Yes, sir, I have.

The Court: Is there anything he should have done that he has not done in preparation of this resolution?

The Petitioner: He did great.

The Court: Do you want to ask him anything at all before we proceed?

The Petitioner: No, sir.

The Court: Is there anything you wish to ask the Court before we proceed?

The Petitioner: No, sir.

The Court: Are you here today under the influence of alcohol?

The Petitioner: No, sir.

The Court: Or of drugs?

The Petitioner: No, sir.

The Court: Have you taken any medication at all in the last 24 hours?

The Petitioner: No, sir.


Upon our review of the guilty plea hearing transcript and the evidence adduced at the post-conviction hearing, we conclude that the post-conviction court properly determined that the petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered. As reflected above, the record shows that the petitioner was specifically questioned and denied being under the influence of drugs, alcohol or medication at the guilty plea hearing. At the post-conviction hearing, the petitioner testified that he was taking Paxil at the time of the guilty plea, which caused him to experience "lock-jaw" or problems with his mouth. He also said that he had been using methamphetamine on a daily basis for some time prior to his arrest in this case, which caused memory loss. However, the petitioner did not say or offer

proof regarding how his use of Paxil or his prior drug use impaired his ability to enter his guilty pleas. In other words, even if the petitioner's prescribed drug use at the time of the guilty plea and his illegal drug use prior to the guilty plea were true, there was no proof presented showing that the petitioner was unable to appreciate the consequences of entering the guilty pleas in this case. As such, the petitioner has failed to prove by clear and convincing evidence that his guilty pleas were constitutionally infirm. Accordingly, he is not entitled to relief.

## CONCLUSION

Discerning no error, we conclude that the post-conviction court properly determined that the petitioner received effective assistance of counsel and that the petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered. The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE